IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNETTE R. PIKE,

        Plaintiff,                      Civil No. 06-898-AS

    v.                                  FINDINGS AND
                                        RECOMMENDATION

MICHAEL J. ASTRUE,

        Defendant.

_____

ASHMANSKAS, Magistrate Judge:

      Plaintiff Annette R. Pike ("Pike") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

**BACKGROUND**

Born in 1958, Pike completed two years of post-secondary education. Tr. 51, 70.[1] Pike worked as a nurse between 1988 and 1996. Tr. 65. Between 1994 and the date of her application Pike reports work as a child care business operator, home caregiver, and assistant to disabled individuals. Id.

Pike filed the present application on June 10, 2003, alleging disability since May 2003, due to "osteoarthritis in both knees and both shoulders." Tr. 53, 64. Pike's applications were denied initially and upon reconsideration. Tr. 24-28, 30-32, 408-412, 414-16. After Pike's September 2005 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Pike could perform significant work in the national economy and, therefore, was not disabled. Tr. 12-21. The Appeals Council denied review, making the ALJ's decision final. Tr. 4-5. Pike presently appeals.

**DISABILITY ANALYSIS**

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920, Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Pike challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer October 23, 2006 (Docket #9).

impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If he determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999), 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f).

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."

3 - FINDINGS AND RECOMMENDATION

Id. at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920.

## THE ALJ'S FINDINGS

The ALJ first found that Pike engaged in substantial gainful activity ("SGA") between May 1, 2003, and December 2003.  Tr. 20.  This period follows Pike's June 2003 alleged onset date. The ALJ also found that Pike had not engaged in SGA after January 1, 2004.  Id.  The ALJ found Pike's allegations regarding her limitations "not fully credible."  Id.  He found her "obesity, osteoarthritis of the bilateral knees status post complete arthroplasty, and rotator cuff and labral tear of the right shoulder status post surgical repair" severe at step two in the sequential proceedings.  Id.  At step three, the ALJ found that Pike's impairments in combination did not meet or equal a "listed" disorder.  Id.  The ALJ evaluated Pike's RFC:

> The claimant has the following residual functional capacity to perform a modified range of sedentary work.  She can lift, carry, push and/or pull less than 10 pounds frequently and up to 10 pounds occasionally.  She can stand and/or walk at least two hours of an eight-hour workday with normal breaks.  She can sit for about six hours of an eight hour workday with normal breaks.  She can frequently balance and stoop.  She can never kneel, crouch, crawl, squat and climb ramps, stairs, ladders, ropes and scaffolds. She is limited in reaching in all directions overhead with her right arm.

Id.  The ALJ subsequently found that Pike could not perform her past relevant work, but that she could perform significant work in the national economy.  Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); Batson v. Comm'r for Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). This court weighs "both the evidence that supports and [that which] detracts from the ALJ's conclusion." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Magallanes, 881 F.2d at 750; see also Batson, 359 F.3d at 1193.

## DISCUSSION

Pike contends the Commissioner failed to meet his burden at step five in the sequential proceedings because, in construing Pike's RFC assessment, the ALJ failed to accurately assess both her credibility and the medical evidence.

### I.    Credibility

Pike's challenge to the ALJ's credibility finding asserts that the ALJ failed to provide "clear and convincing" reasons for rejecting her testimony. Pike specifically claims that the ALJ: 1) misread examination and physical therapy reports concerning her shoulder pain; 2) erroneously cited Pike's "minimal" medical treatment after October 2004, as well as her failure to report pain to providers in 2005; 3) erroneously considered a treating physician's work release; 4) erroneously considered her earnings and work activity in 2003; and 5) inaccurately assessed her activities of daily living.

####    A.    Credibility Analysis

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v.

5 - FINDINGS AND RECOMMENDATION

Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Once a claimant shows an underlying impairment, the ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, including any failure to seek treatment, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  Id.

    **B.**    **Discussion**

    **a.**    **Objective Medical Record**

Pike challenges the ALJ's interpretation of and reliance upon the objective medical record in reaching his credibility decision.  The ALJ may consider the medical record in concert with other credibility factors.  Robbins, 466 F.3d at 883.

    *i.*    *Physical Therapy Reports*

Pike first asserts that the ALJ erroneously cited her physical therapy records.  The ALJ found that physical therapy records produced after Pike's March 2004 shoulder surgery "reveal gradually improved range of motion, decreased pain, and increased function, although she complained of increased pain on two occasions due to moving."  Tr. 15.

The physical therapy records show treatment between September 2000 and August 2005. Tr. 276-319.  Each notation includes a statement summarizing Pike's reports of her pain levels or

"patient response." Id. Throughout her physical therapy Pike reported periods of both improvement and deterioration.

During the 2004 period Pike challenges, the record shows that Pike reported both improvement and "increased" pain following specified activity. Specifically, the record shows that Pike reported "some pain increase after driving" on April 1, 2004, occasional use of her arm rather than her hand to open doors on April 6, 2004, "improvement" on April 8, 2004, and a statement by Pike that "her shoulder overall is feeling better, though she still gets discomfort with initiation of flexion and any kind of external rotation." Tr. 284. On April 22, 2004, therapists noted that Pike "continues to slowly improve." Id.

The record in May 2004 indicates that Pike reported increased pain with activity. Tr. 283. In June 2004 Pike reported that her pain decreased "as her activity decreased." Tr. 282. Pike continued to show decreased pain in subsequent visits; Pike did not attend physical therapy between June 8, 2004, and December 15, 2004. Tr. 279-80. At this time the therapist wrote that Pike "presents about the same." Tr. 280.

The ALJ's finding that Pike's pain "gradually" decreased following her March 2004 surgery is supported by the record above. The ALJ's credibility inference based upon Pike's physical therapy reports should be sustained.

### ii.  *Minimal Medical Treatment*

Pike's credibility challenge also contests the ALJ's citation to Dr. Colorito's examination notes. Pl. Opening Br. 14. The ALJ discussed these notes in his credibility analysis:

> In May 2004 Dr. Colorito reported that although the claimant continued to have some shoulder pain after surgery, physical examination revealed no instability and she had full range of

7 - FINDINGS AND RECOMMENDATION

> motion. He commented that she needed to continue therapy and work on strengthening. She was prescribed Vioxx for control of inflamation. He also noted that she planned to leave in early June to be a camp nurse (Exhibit 6F/141) . . . [Pike] did not return to Dr. Colorito until January 2005 reporting that the pain was exacerbated by a fall on her shoulder . . . . When she returned [to Dr. Colorito] in August 2005 for a check of her knees, she did not mention any shoulder pain (Exhibits 6F/144-147 and 7F). There is also no indication that she has reported complete inability to use her right arm to any treating or examining physician.

Tr. 15-16.

The ALJ may find a claimant not credible if she fails to seek treatment. Smolen, 80 F.3d at 1284. However, the ALJ must consider explanations for a claimant's failure to seek treatment. See id. Here, the ALJ infers that Pike's periods of absence from Dr. Colorito's office suggest that she did not seek treatment during these periods. Pike does not suggest she could not afford treatment. She instead suggests that she did not seek treatment because in January 2005 Dr. Colorito's noted that he "really [had] not much more to offer her." Pl. Opening Br. 14, citing tr. 202. The record confirms that Dr. Colorito made this assessment. Tr. 202. The ALJ's finding that Pike failed to seek treatment fails to acknowledge her reasons for doing so and should not be sustained.

### iii.    Dr. Colorito's Work Release

Pike also suggests that Dr. Colorito's March 2004 work release enhances her credibility. Pl. Opening Br. 15. The ALJ noted Dr. Colorito's work release following Pike's March 2004 shoulder surgery:

> The claimant's allegation of inability to work are not fully supported by opinion of the physicians of record. After the claimant's most recent shoulder surgery in March 2004, Dr. Colorito released the patient to perform light duty voice-activated

8 - FINDINGS AND RECOMMENDATION

> computer work with no lifting over five pounds on April 12, 2004 (Exhibit 9F/235). While treating orthopedic surgeon Dr. Colorito has more recently opined claimant's knee arthritis and right shoulder impairment limit her to a modified range of sedentary work with postural limitations and limitations in reaching, he did not report an opinion that [the] claimant is incapable of sustaining any type of work activity (Exhibit 10F).

Tr. 16.

Pike contends that any release referring to "voice activated software" represents an accommodation under the Americans With Disabilities Act and thus cannot be considered in the present proceedings. Pl. Opening Br. 12. Regardless, the record does not support any submission that Dr. Colorito expected his March 2004 restrictions to last twelve months or longer. For this reason, the ALJ appropriately noted that the Pike's "allegations of inability to work are not fully supported by the opinions of the physicians of record." Tr. 16. This aspect of the ALJ's credibility analysis should be sustained.

### b.   Work Activity

Pike contends that "the evidence shows plaintiff's only income *from work* in 2003 averaged $770.00, below the $800.00 threshold for substantial gainful activity." Pl. Opening Br. 15 (emphasis original). The ALJ noted Pike's "continued self employment after her alleged onset date" as a private duty nurse and as a camp nurse. Tr. 16. The ALJ also "acknowledged the claimant's work activity in 2004 does not appear to meet Social Security Administration definition of substantial gainful activity. However, it does indicate an ability to perform some type of work activity." Tr. 16.

Part time work, or even volunteer activity, may show that a claimant is capable of performing more substantial work. 20 C.F.R. §§ 404.1571, 416.971. The ALJ may indicate

9 - FINDINGS AND RECOMMENDATION

discrepancies between reported daily activities and alleged impairments. Smolen, 80 F.3d at 1284. A claimant's daily activities may also suggest the claimant retains an ability to perform work activities. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999). See also Orn, 2007 WL 2034287 at * 13. The ALJ's reference to Pike's activity as a camp nurse for three months in 2004 and as a private duty nurse in 2005 should be sustained.

### c. Activities of Daily Living

Finally, the ALJ's credibility analysis cited Pike's activities of daily living, finding, "the claimant's report of inability to use her right arm for any activity is inconsistent with her reported ability to drive, wash dishes, fold clothes, cook," and perform work activity as a nurse. Tr. 16. Pike contends that she "alleges only minimal ability to use her right arm, not complete inability." Pl. Opening Br. 16. Pike also contends that her nursing work activity "only required four hours of actual work activity a week," and that her attendance at a wedding reception was a "one time event." Finally, Pike suggests that she had to "steer her van from the outside while her daughters pushed it" after the van broke down. Id. After reiterating these explanations for her the activities the ALJ cited, Pike submits that "the ALJ impermissibly misconstrued evidence and took evidence out of context." Id. citing Reddick v. Chater, 157 F.3d 715, 721-23 (9th Cir. 1998).

Pike's citation indicates discussion of disability analysis, generally, as well as credibility analysis and daily living activities. Reddick, 157 F.3d at 721-23. The Reddick claimant had chronic fatigue syndrome, and alleged that the ALJ mischaracterized her daily activities. Id. at 722. The Reddick court noted that chronic fatigue syndrome is "characterized by periods of exacerbation and remission." Id. quoting Cohen v. Secretary of Dept. of Health and Human Servs., 964 F.2d 524, 530 (6th Cir. 1992). The court subsequently noted authorities stating that

10 - FINDINGS AND RECOMMENDATION

claimants should not be penalized for attempting to lead normal lives.  Id. citing Cohen, 964 F.2d at 530-31, Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987), Fair v. Bowen, 885 F.3d 597, 603 (9th Cir. 1989).  The Reddick court concluded:

> [T]he ALJ erred in characterizing statements and documents contained [in the record] to reach the conclusion that Claimant exaggerated her symptoms.  Examples include the ALJ's description of Claimant's [physician-ordered] aerobic activity and Tupperware sales, and his characterization of an activities report completed by Claimant's sister-in-law.  In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports.  His paraphrasing of the record material is not entirely accurate regarding the content or tone of the record.  We conclude that his approach and conclusions do not fully account for the nature of CFS and its symptoms.

Id. at 722-23.

Pike fails to show that musculoskeletal impairments are universally and inherently characterized by the "periods of exacerbation and remission" that accompany chronic fatigue syndrome.  Furthermore, Pike's assertion that she had to push her van out of traffic and attended a "one time" wedding reception do not convince this court that the ALJ misread the record regarding her general activities of daily living.  The ALJ noted Pike's household chores and, more significantly, her work activity.  Tr. 16.  Such citation is appropriate and may indicate discrepancy between a claimant's purported disability and activity.  Smolen, 80 F.3d at 1284.  The ALJ did not improperly misconstrue these activities.  These findings should be sustained.

The ALJ's inference that Pike's reported inability to walk further than one block is contradicted by her testimony that she walked the perimeter of the Hatfield Courthouse could represent an effort to distort Pike's testimony.  Tr. 16, 434-36.  Though this finding is based

11 - FINDINGS AND RECOMMENDATION

upon the record, this court finds the ALJ's discussion of whether the perimeter of a city block constitutes one block or four disingenuous. This finding should not be sustained.

### C. Credibility Conclusion

Except as noted, this court finds that the ALJ provided sufficiently "clear and convincing" reasons for finding Pike not credible. The ALJ's credibility finding may be sustained even if some elements of it are singularly unsustainable. Batson, 359 F.3d at 1197. The ALJ's credibility finding should be sustained.

## II. Medical Source Statements

Pike argues that the ALJ failed to credit the opinion of her treating physician, orthopedist Dr. Colorito. Pl. Opening Br. 9.

The ALJ discussed Dr. Colorito's clinical records in detail. Tr. 14-18. The ALJ specifically cited Dr. Colorito's September and October 2003 reports that Pike's knee condition was stable following surgery, and that x-rays revealed "bone on bone" arthritis but no acute changes. Tr. 14. The ALJ also noted Dr. Colorito's May 2004 treatment notes, showing that Pike exhibited no shoulder instability following surgery, though Pike reported pain. Tr. 15. The ALJ finally noted that Dr. Colorito administered steroid injections in April 2005 and that "when [Pike] returned [to Dr. Colorito] in August 2005 for a check of her knees she did not mention shoulder pain." Tr. 16.

In construing Pike's RFC, noted above, the ALJ gave "greater weight" to Dr. Colorito's September 2005 opinion. Tr. 18. Pike challenges the ALJ's reliance upon this opinion rather than Dr. Colorito's March 2004 opinion.

12 - FINDINGS AND RECOMMENDATION

### A.   Legal Standard

An ALJ may reject physician opinions inadequately supported by clinical notes or findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2004)). Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of a treating physician. Id.

### B.   Discussion

Dr. Colorito submitted a letter to the record on March 15, 2004. Tr. 251. Dr. Colorito cited Pike's history of degenerative arthritis of the left knee, fractured fifth metacarsul [little toe], and bilateral shoulder surgery. Id. Dr. Colorito concluded, "The combined effect of [Pike's] orthopedic problems have resulted in the patient being disabled over the course of the last year," indicating that he believed Pike unable to work between May 2003 and May 2004. Id.

The ALJ discussed this letter:

> I have also considered Dr. Colorito's March 2004 opinion that the claimant would be "disabled" during the period May 2003 to May 2004 (Exhibit 6F/96). However, [Dr. Colorito] explained that his opinion was based on her multiple surgical procedures during that time, each of which was estimated to require two months recovery time (less than 12 months). Accordingly, his opinion of disability is not consistent with that contemplated in Social Security regulations.

Tr. 17-18.

The ALJ continued his analysis:

> [Dr. Colorito's March 2004] opinion is also inconsistent with reports dated March 31, 2003 and April 12, 2004, that [Pike] was

13 - FINDINGS AND RECOMMENDATION

> released for light duty work (Exhibit 6F/72 and 73). Moreover, [Dr. Colorito] opined that [Pike] would be capable of performing a sedentary "desk job" once she had recovered from surgery in March 2004. While Dr. Colorito has also reported claimant would be limited in lifting less than five pounds, I have given greater weight to his most recent opinion of September 19, 2005, that she can lift up to 10 pounds occasionally with the right arm (Exhibit 10F).

Tr. 18.

Pike argues that "the ALJ's authority for the expected recovery time is unknown, as such is not mentioned in Dr. Colorito's opinion." Pl. Opening Br. 11, citing tr. 251. Pike also challenges ALJ's citation to DDS physicians. Id., citing tr. 17.

However, Dr. Colorito's notes do not support his own assertion of disability. Dr. Colorito did not assign Pike any sustained work restrictions lasting throughout this period. Tr. 205-251, 274. The record supports the ALJ's finding that Dr. Colorito released Pike for work March 31, 2003, and in May 2004 released Pike for light duty work with a five-pound upper-extremity lifting restriction. Tr. 275-76. These releases do not indicate that Dr. Colorito restricted Pike from all work activity during the interim period. For these reasons, the ALJ's analysis of Dr. Colorito's respective opinions in March 2004 and September 2005 is consistent with the record.

Finally, this court notes that disability decisions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

### C. Conclusion

In light of the above analysis, further arguments need not be considered. Dr. Colorito's own notes do not support his March 2004 assertion that Pike was disabled between May 2003 and May 2004. The ALJ may reject a physician's opinion unsupported by clinical findings.

Bayliss, 427 F.3d at 1216. The ALJ's analysis should be sustained.

## CONCLUSION

Pike fails to show that the ALJ's evaluation of the evidence resulted in an erroneous RFC assessment. The ALJ based his step five analysis upon an appropriate RFC assessment. His finding that Pike can perform work existing in the national economy should be sustained.

## RECOMMENDATION

The Commissioner's decision that Pike did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and the case should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due August 27, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

Dated this 10th day of August, 2007.

/s/Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge